# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**UNITED STATES OF AMERICA**

**VS.**                              **No. 2:22-CR-00011-01-BSM**

**FREDDIE D. GLADNEY, III**

## AMENDED ORDER[1]

**I.   Overview**

On May 18, 2022, Defendant Freddie D. Gladney, III. appeared with his retained counsel Rickey Hicks for a bond hearing.[2] *Doc. 12*. The Government was represented by Assistant United States Attorneys (AUSA) Amanda Fields and Julie Peters.

A three-count indictment charges Mr. Gladney with possession with intent to distribute marijuana (Count 1), possession of a machine gun (Count 2), and possession of firearms in furtherance of a drug trafficking crime (Count 3). The most serious charge, Count 3, is punishable by not less than 30 years in prison. The nature of the charges authorizes the Government to seek detention and gives rise to a rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e), (f)(1).

---

[1] See footnote 4 and related text in body. That is the only change in this Amended Order.
[2] Mr. Gladney has been detained since April 14, 2020 when he initially appeared on a criminal complaint.

1

To resolve the question of detention, the Court must apply the factors outlined in 18 U.S.C. § 3142(g) to determine whether conditions of release exist that will reasonably assure the safety of the community and Mr. Gladney's appearance.[3] In applying these factors, the Court is mindful of the fact that "liberty is the norm, and detention prior to trial or without trial . . . the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 756 (1987); *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985) (en banc) ("Congress envisioned the pretrial detention of only a fraction of accused individuals awaiting trial.").

For the reasons explained below, the Court declines to detain Mr. Gladney at this time, but warns him that any violation of his bond conditions is likely to result in his detention.

## II.    Evidence at Hearing

### A.    Mr. Gladney's Career

Mr. Gladney is an up-and-coming rap artist, performing as "Bankroll Freddie." Mr. Gladney performs at different venues, including nightclubs, birthday parties, and arenas. Mr. Avery Lavar Campbell, the proposed third-party custodian, testified that Mr. Gladney is paid a substantial sum of money for each show. At each

---

[3] The factors to be considered are as follows: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4).

2

performance, Bankroll Freddie performs for only 15 to 35 minutes. But there are pre- and after-parties. An after-party can be attended by as many as 300 people. Marijuana use is common at these parties, according to Mr. Campbell.

**B.     Release Plan**

During the lengthy hearing, Mr. Gladney presented a release plan that rebutted the presumption of detention, leaving the presumption as one factor for the Court's consideration. Specifically, Mr. Gladney proposed Mr. Campbell as a third-party custodian. Mr. Campbell currently works as Mr. Gladney's bodyguard and as a Youth Pastor at Antioch Baptist. Mr. Campbell served his country for six years, including two tours in Iraq and one in Afghanistan. Mr. Campbell has an enhanced carry license and firearms in his home, although he offered to remove all firearms from his home if Mr. Gladney lives with him. Mr. Campbell came across as an honest person and, in general, a suitable third-party custodian.

However, there are concerns. Mr. Campbell candidly acknowledged that "if he [Mr. Gladney] works, I work." The Government argued that Mr. Campbell's financial dependence on Mr. Gladney creates a disincentive for Mr. Campbell to carry out his oversight duties as a third-party custodian. By the same token, the concerns that motivate Mr. Campbell to keep Mr. Gladney working should motivate Mr. Campbell to ensure that Mr. Gladney abides by the terms of his pretrial release so that he can remain free on bond. In addition, Mr. Gladney is not Mr. Campbell's

only source of income. Finally, Mr. Campbell struck the Court as someone who: (1) will take seriously his duties as a third-party custodian; and (2) is a good role model for Mr. Gladney.

### C.  Nature of the Offense

The Government presented the testimony of TFO Michael Gibbons, who testified about Mr. Gladney's arrest in this case. Mr. Gladney was pulled over for speeding in West Memphis, Arkansas while driving a Chevy Silverado truck, with dealer plates.

After securing Mr. Gladney in the back of the patrol car, officers searched the vehicle and recovered: (1) a loaded Micro Draco AK-47 style pistol in the front passenger's seat, under some clothing and a bag;[4] (2) a Polymer 80 9 Glock clone handgun with no serial number and $33,662 in cash in the center console; (3) a duffle bag with 21.4 pounds of "high-grade" marijuana in the back seat; and (4) seven magazines (including five extended magazines) located throughout the vehicle.

Video of the arrest was played during the hearing. Mr. Gladney pulled over after the officer hit his blue lights. As the officer is standing on the passenger side, talking to Mr. Gladney through the window, Mr. Gladney gets out of the truck,

---

[4] The original Order referred to the Draco being found "under a bag of clothing under the passenger seat." This was taken verbatim from the pretrial report. However, the parties agree that this was inconsistent with the trooper's report (which was not entered into evidence), and the Court credits TFO Gibbons' testimony about the location of the Draco.

stands up, and then gets back into the truck, appearing to reach over into the passenger side. The officer tells him to get out of the truck. Mr. Gladney refuses. The trooper then walks around to the driver's side to physically remove Mr. Gladney from the truck. Another officer assists. Once he is removed from the truck, Mr. Gladney is placed on the ground and cuffed.

Mr. Gladney's counsel suggested he was reaching for his phone. Mr. Gladney's actions on the video suggest something less benign, although it cannot be determined what he is doing in the vehicle.

After being placed in the patrol car, Mr. Gladney, whose hands are cuffed behind his back, is moving around in a manner that strongly suggests he is attempting to do something or get something from the rear portion of his body. The Government argued that the video evidence supports its theory that Mr. Gladney removed a "Glock switch"[5] from his person and stuffed it in the back seat of the patrol car. TFO Gibbons testified that, the following day, the arresting officer removed the back seat of his patrol car and found a Glock switch. The arresting officer told TFO Gibbons that Mr. Gladney was the last person in the patrol car and that he routinely checks his back seat after transporting an arrestee.

---

[5] A "Glock switch" is a device that can turn a semi-automatic handgun into a fully-automatic handgun.

5

Mr. Campbell testified that one of the guns found in the truck (the Draco) was his, and left there from a previous trip. He testified that he had seen a second gun (the Polymer 9 mm) in the possession of Braxton Green, a member of Mr. Gladney's entourage who died in September of 2021. Mr. Gladney is part owner of a car dealership in North Little Rock. Mr. Campbell testified that numerous individuals, in addition to Mr. Gladney, had access to the Chevy Silverado truck he was driving when arrested.

The Polymer 9 mm[6] was missing a back plate cover,[7] and no cover was ever found in the vehicle. This creates an additional inference that the Glock switch found in the patrol car went with this gun. As TFO Gibbons pointed out, without either a back plate switch or a Glock cover, this gun would have been inoperable.

The Court is gravely concerned with Mr. Gladney's apparent possession of a Glock switch and a Polymer 9 mm, multiple magazines and a significant amount of ammunition. However, this information goes to the weight-of-evidence factor under § 3142(g)(2)[8] and should be assessed for its impact on whether there are conditions

---

[6] It is also known as a ghost gun because it is not traceable.

[7] A back plate cover must be removed to install the Glock switch.

[8] At least two Circuits have held that this factor is the least important factor in the detention calculus. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (holding that "the weight of the evidence is the least important of the various factors. . . . Although the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty."); *United States v. English*, 629 F.3d 311,

of release that will reasonably assure the safety of the community. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (noting that the weight-of-evidence factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt").

As Mr. Campbell and TFO Gibbons both testified, Glock switches are inherently reckless because a gun fired with a switch on fully-automatic mode can't be controlled. It makes sense that federal law classifies Glock switches as machine guns. However, there is nothing to suggest that a defendant charged with possession of a Glock switch, alone, means that he is dangerous to the point that bond should automatically be denied.[9]

### D. Mr. Gladney's Criminal History

Technically, this is Mr. Gladney's first felony conviction. He was convicted previously of one felony offense, but it was expunged.[10] For the expunged

---

317 (2d Cir. 2011) (affirming detention order by judge who observed that the weight of the evidence "is one of the most important factors").

[9] From a quick review of recent, similar cases in this district involving a defendant's alleged possession of a Glock switch, the majority of defendants were initially released on bond conditions. See, e.g., *United States v. Brown*, No. 4:20-cr-00088-JM; *United States v. Scott*, No. 4:20-cr-00299-KGB; *United States v. Millea*, No. 4:20-cr-00352-02-LPR; *United States v. Brown*, 4:21-cr-00156-JM; *United States v. Simmons*, No. 4:22-cr-00052-02-KGB; *United States v. Thomas*, 4:22-MJ-00019-JTK; *United States v. Jeffers*, No. 4-21-cr-00251-01-LPR; *United States v. Foulks*, No. 4:21-cr-00249-01-DPM; *United States v. Smith*, No. 4:21-cr-00259-LPR.

[10] Under Arkansas law, expungement means, "the underlying conduct shall be deemed as a matter of law never to have occurred." Ark. Code Ann. § 16-90-902. A federal court in Tennessee – where Mr. Gladney picked up the expunged conviction – came to a similar conclusion. *United States v. Roper,* No. 3:19-CR-00315, 2021 WL 1222775, at *3, n.4 (M.D. Tenn. Apr. 1, 2021)

7

conviction, Mr. Gladney received probation, which he successfully completed in September of 2021, *before* picking up the instant charges.

Mr. Gladney also has no violence in his history. The Government pointed out that Mr. Gladney allegedly resisted during his arrest for the expunged conviction and the Court observed for itself the video evidence documenting the fact that Mr. Gladney was not fully compliant with the police during his arrest in this case. However, the lack of evidence suggesting that Mr. Gladney has demonstrated violence toward others weighs in his favor.

**E.    Community Ties**

Mr. Gladney has five minor children, four of whom live in Arkansas and one in Texas. Mr. Gladney provides financial support for his children and other family members.

Additionally, his family and community ties, combined with his very public career, makes it unlikely that he will attempt to flee. Instead, he has every incentive to comply with his release conditions so that he may continue working.

---

(holding that, in Tennessee, an expungement is "as if the arrest or charge never occurred. Considering the incident report of the arrest would defeat this purpose. For purposes of this case, the Court therefore gives no consideration to the expunged charge or any incident report of the underlying circumstances of that charge.").

## III. Conclusion

This is a close case, primarily because of the charged offense conduct. After carefully considering all of the § 3142(g) factors, the Court finds that the Government has failed to demonstrate, by clear and convincing evidence, that Mr. Gladney poses such a danger to the community that there are no conditions of release that can be imposed that will reasonably assure the safety of the community. The evidence will not support a finding to detain Mr. Gladney as a flight risk.

However, the Court needs additional information in order to fashion appropriate release conditions. For that purpose, the Court leaves the record open.

A hearing is scheduled for May 20, 2022 at 1:00 p.m. for the purpose of discussing appropriate conditions of release and discussing with Mr. Campbell his duties as third-party custodian. Both sides should be focused on crafting a release plan that strikes a balance between allowing Mr. Gladney to work, with conditions that will reasonably assure the safety of the community.

IT IS SO ORDERED this 20th day of May, 2022.

_____
UNITED STATES MAGISTRATE JUDGE